_____
Honorable Mike K. Nakagawa
United States Bankruptcy Judge

Entered on Docket
March 25, 2019

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: | Case No.: 08-13570-MKN |
| | Consolidated with Case No.: 08-19425-LEB |
| DORIS J. BARRETT, | |
| | Chapter 7 |
| Debtor. | |
| In re: | |
| WILLIAM BARRETT [Deceased], | Date:  March 6, 2019 |
| | Time:  2:30 p.m. |
| Debtor. | |

**ORDER REGARDING SECOND AMENDED MOTION FOR DETERMINATION THAT HOA FORECLOSURE SALE VIOLATED THE AUTOMATIC STAY, AND COUNTER-MOTION TO RETROACTIVELY ANNUL THE STAY[1]**

On March 6, 2019, the court heard the Second Amended Motion for Determination that HOA Foreclosure Sale Violated the Automatic Stay ("Motion") brought by The Bank of New York Mellon, fka The Bank of New York as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust ("BONY"). The court also heard the Counter-Motion to Retroactively Annul the Stay ("Counter-Motion") brought by 2298 Driftwood Tide Trust ("Driftwood Trust"). The appearances of counsel were noted on the record. After arguments were presented, the matters were taken under submission.

---

[1] In this Order, all references to "ECF No." are to the number assigned to the documents filed in the first above-captioned case as they appear on the docket maintained by the clerk of court. All references to "2ECF No." are to the documents filed in the second above-captioned case. All references to "AECF No." are to the documents filed in any adversary proceeding referenced in this Order. All references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "NRS" are to provisions of the Nevada Revised Statutes.

**BACKGROUND**

This dispute involves two separate Chapter 7 proceedings by two individual debtors, two civil actions, and one real property foreclosure, all occurring within one decade.

On April 14, 2008, Doris J. Barrett ("Doris") filed a "skeleton" voluntary Chapter 7 petition. (ECF No. 1). On the same date, a notice of the Chapter 7 filing ("Bankruptcy Notice") was issued scheduling a meeting of creditors for May 19, 2008, and notifying creditors of the appointment of a Chapter 7 trustee. (ECF Nos. 6). The Chapter 7 proceeding was assigned for administration to a panel Chapter 7 trustee, Yvette Weinstein ("Trustee").

On May 22, 2008, Doris filed her schedules of assets and liabilities ("Schedules") and statement of financial affairs, and other required information. (ECF No. 23). On her Schedule "A," Doris listed a single-family rental property located at 2298 Driftwood Tide Avenue, Henderson, Nevada 89052 ("Driftwood Property") as having a value of $1,850,000. On her Schedule "D," she listed Bank One/Chase, Countrywide Home Lending ("Countrywide"), and National City as having separate claims in varying amounts, all secured by the Driftwood Property. On her Schedule "F," Doris listed La Cima HOA ("HOA"), 3960 Patrick Lane, Suite 103, Las Vegas, NV 89120, as "HOA for Business Property 2298 Driftwood Tide Avenue," and having an unsecured claim in the amount of $1,526.58. On her Schedule "H," Doris listed William Barrett ("William") as being a co-debtor with respect to the Driftwood Property. The Bankruptcy Notice was served on served on all creditors listed in the Schedules filed by Doris. (ECF No. 10).

On August 21, 2008, a separate voluntary Chapter 7 petition was filed by William, who was married to Doris. William's case also was assigned for administration to the Trustee. On the same date, William filed his schedules of assets and liabilities ("Schedules"), statement of financial affairs, and other required information. (2ECF 1). On his Schedule "A," William also listed an interest in the Driftwood Property. On his Schedule "D," William also listed Countrywide and National City, but not Bank One/Chase. On his Schedule "F," he listed the same HOA with respect to the Driftwood Property. On his Schedule "H," William listed Doris as being a co-debtor with respect to the Driftwood Property. A notice of William's bankruptcy filing was issued scheduling his meeting of creditors for September 26, 2008. Notice of

William's bankruptcy filing was served on all creditors listed in the Schedules filed by William. (2ECF No. 10).

On October 20, 2008, Doris filed amended Schedules "B" and "C." (ECF No. 96).

On October 21, 2008, a motion was filed to consolidate the two bankruptcy estates. (ECF No. 98; 2ECF No. 35).

On October 28, 2008, a Suggestion of Death was filed with respect to William. (2ECF No. 39).

On November 6, 2008, a motion for relief from stay as to the Driftwood Property was filed by Countrywide and scheduled to be heard on December 2, 2008. (ECF Nos. 102 and 104). Countrywide alleged that it was the holder of a first deed of trust against the Driftwood Property securing a claim exceeding $1,543,000.00.

On December 3, 2008, an order was entered substantively consolidating the two bankruptcy estates. (ECF No. 107; 2ECF No. 47).[2]

On December 16, 2008, the Trustee in Doris's case filed a notice of intent to abandon the Driftwood Property ("Abandonment Notice"). (ECF No. 112).

On January 15, 2009, an order was entered granting relief from stay in favor of Countrywide. (ECF No. 123).

On June 23, 2009, the HOA issued a Notice of Delinquent Assessment Lien ("NODAL") with respect to the Driftwood Property that was recorded on June 29, 2009.

On June 1, 2010, a Chapter 7 discharge was entered in favor of Doris. (ECF No. 142).

On December 20, 2010, the HOA issued a second Notice of Delinquent Assessment Lien ("Second NODAL") that was recorded on December 30, 2010.

On February 24, 2011, the HOA issued a Notice of Default and Election to Sell under Homeowners Association Lien ("Notice of Default and Election to Sell") that was recorded on March 17, 2011.

On August 15, 2011, the HOA issued a Notice of Trustee's Sale that was recorded on September 8, 2011.

---

[2] Although the two cases were substantively consolidated, pleadings and documents continued to be filed sporadically-in both cases.

3

On October 12, 2011, Las Vegas Development Group, LLC ("LVDG") paid $17,285.00 to purchase the Driftwood Property at the HOA foreclosure sale ("HOA Foreclosure").[3] A Trustee's Deed Upon Sale was executed by the foreclosure trustee and recorded on October 14, 2011. Throughout the foreclosure process, the HOA was represented or otherwise acted through an entity identified as Alessi & Koenig, LLC ("Alessi & Koenig").

On August 22, 2012, a motion for relief from stay as to the Driftwood Property apparently was filed by BONY in William's case, although it may have been intended for Doris' case. (ECF No. 147). BONY alleged that it was the holder of a first deed of trust against the Driftwood Property securing a claim exceeding $1,899,771.00.

On September 28, 2012, an order was entered granting relief from stay in favor of BONY. (ECF No. 151).

On February 5, 2013, another motion for relief from stay as to the Driftwood Property was filed by BONY in William's case and scheduled to be heard on March 12, 2013. (2ECF Nos. 58 and 59). BONY alleged that it was the holder of a first deed of trust against the Driftwood Property securing a claim exceeding $1,925,919.00.

On March 18, 2013, an order was entered granting relief from stay in favor of BONY. (2ECF No. 62).

On May 21, 2015, a Trustee's Final Account and Proposed Distribution was filed ("TFR"). (ECF No. 199). The Individual Estate Property Record and Report attached as Form 1 to the TFR, stated that the relief from stay had been granted with respect to the Driftwood Property and that the property, therefore, had zero value to the bankruptcy estate.

On November 2, 2015, a final decree was entered closing Doris's Chapter 7 case. (ECF No. 210). On the same date, a notice was issued that William's case was closed without a discharge because he had died without filing a certification of completion of the required debtor education course. (2ECF No. 70).

---

[3] In her Schedules, Doris valued the Driftwood Property at $1,850,000. It appears that LVDG acquired the Driftwood Property for less than one percent of the value estimated by Doris.

4

On March 2, 2017, LVDG executed a Grant Deed in favor of the Driftwood Trust that was recorded on March 3, 2017.[4]

On March 6, 2017, Driftwood Trust commenced a civil action against Doris, William, Bayview Loan Serving LLC ("Bayview"), BONY, Nure Inc., PNC Bank National Association, and National City Bank, in the Eighth Judicial District Court, Clark County, Nevada ("State Court"), denominated Case No. A-17-752012-C ("Driftwood Trust Action").  The complaint seeks declaratory relief quieting title to the Driftwood Property in favor of Driftwood Trust.

On March 31, 2017, Bayview and BONY filed a Notice of Removal ("Removal Notice") to remove the Driftwood Trust Action to this bankruptcy court in connection with a voluntary Chapter 7 proceeding that had been commenced by Alessi & Koenig on December 13, 2016, denominated Case No. 16-16593-ABL.  (AECF No. 1).  Upon removal to the bankruptcy court, the Driftwood Trust Action was assigned Adversary Proceeding No. 17-01175-ABL.  Bayview and BONY represented that they were authorized to remove a number of cases to challenge the validity of various homeowners association foreclosures under Nevada law.  Both represented that "A dispositive question in each case is whether the Debtor (sic), by conducting such foreclosure sale pursuant to a Nevada statute that the Ninth Circuit has determined to be facially unconstitutional, could have extinguished the first deed of trust that encumbered the subject property, or whether, as [Bayview and BONY] believe, such deed of trust was not extinguished and continues to encumber the subject property notwithstanding the foreclosure sale.  *See Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.*, No. 15-15233, at *13 (9th Cir. Aug. 12, 2016)."  Removal Notice at 3:10-16.[5]

---

[4] The managing member of LVDG apparently is the trustee of Driftwood Trust and apparently occupies the Driftwood Property as his personal residence.

[5] The Bourne Valley Court Trust decision is reported at 832 F.3d 1154 (9th Cir. 2016). After Bourne Valley was decided, the Nevada Supreme Court issued a contrary decision upholding the constitutionality of the Nevada statute.  See SFR Investments Pool 1, LLC v. Bank of New York Mellon, 422 P.3d 1248 (Nev. 2018).  In view of the subsequent decision by the highest court of Nevada interpreting Nevada law, federal courts in Nevada generally have rejected repeated constitutional challenges by lenders whose junior liens have been extinguished by a homeowners association foreclosure sale.  See, e.g., Prof-2013-S3 Legal Title Trust IV, etc. v. SFR Investments Pool 1, LLC, 2019 WL 1005185 (D. Nev. Mar. 1, 2019); Las Vegas Development Group, LLC v. 2014-3 IH Equity Owner, LP, 2019 WL 415321 (D. Nev. Jan. 31,

On May 25, 2017, the bankruptcy court heard a motion to remand filed by Driftwood Trust.  (AECF No. 4).

On June 30, 2017, BONY commenced its own civil action against Doris, William, and Driftwood Trust ("BONY Action"), in the United States District Court for the District of Nevada ("USDC"), denominated Case No. 2:17-cv-01809-MMD-PAL.[6]  Its original complaint was framed as three separate claims, seeking judicial foreclosure and declaratory relief, as well as damages for breach of contract against Doris and William.  (USDC ECF No. 1).

On August 24, 2017, the Driftwood Trust Action was remanded to the State Court.  (AECF No. 16).[7]

On October 19, 2018, Doris filed an ex parte motion to reopen her bankruptcy case, alleging that BONY had violated her Chapter 7 discharge by commencing the BONY Action against her that attempted to collect a debt secured by the Driftwood Property.  (ECF No. 216).  Doris sought to reopen the case so that she could file a motion to hold BONY in contempt for violation of the discharge injunction and to obtain sanctions.  On the same date, an order was entered granting the ex parte motion to reopen the Chapter 7 case.  (ECF No. 218).

On October 22, 2018, Doris filed a motion seeking contempt sanctions against BONY ("Sanctions Motion") that was scheduled to be heard on November 27, 2018.  (ECF No. 220 and 222).

On October 29, 2018, in the BONY Action, a notice of voluntary dismissal was filed as to the breach of contract claim against Doris.  (USDC ECF No. 12).

---

2019); Nationstar Mortgage LLC v. Curti Ranch Two Maintenance Assoc., Inc., 2019 WL 403863 (D. Nev. Jan. 30, 2019); Deutsche Bank National Trust Co. v. SFR Investments Pool 1, LLC, 2018 WL 6003852 (Nov. 14, 2018); Prof-2013-S3 Legal Title Trust Iv., etc. v. Flying Frog Avenue Trust, 2018 WL 4494085 (D. Nev. Sep. 19, 2018).

[6] All references to "USDC ECF No." are to the documents filed in the BONY Action.

[7] Before it was removed, no answer or other response was filed to the complaint filed in the Driftwood Trust Action.  After it was removed to the bankruptcy court, no answer or other response was filed to the complaint.  After it was remanded to the State Court, no answer or other response appears to have been filed.

On December 31, 2018, in the BONY Action, a stipulation between BONY and Doris was filed, to dismiss any claim against Doris and for Doris to disclaim any interest in the Driftwood Property.[8] (USDC ECF No. 14).

On December 31, 2018, in the BONY Action, BONY also filed a first amended complaint against William's estate as well as Driftwood Trust. (USDC ECF No. 15). The amended complaint is framed as four separate claims, seeking judicial foreclosure and declaratory relief, as well as damages for breach of contract against William's estate. The fourth claim in the amended complaint seeks a declaration that the HOA Foreclosure was void for two reasons: (1) that the underlying Nevada foreclosure statute is unconstitutional on its face, and (2) that the HOA Foreclosure sale was conducted in violation of the automatic stay.

On January 2, 2019, the USDC entered an order in the BONY Action approving the dismissal of Doris. (USDC ECF No. 16).

On January 3, 2019, an order was entered by this bankruptcy court approving a stipulation between Doris and BONY to dismiss the Sanctions Motion with prejudice. (ECF No. 233).

On January 3, 2019, BONY also filed in this bankruptcy court a motion seeking a determination that the HOA Foreclosure sale of the Driftwood Property violated the automatic stay. (ECF No. 234).

On January 28, 2019, BONY filed the instant amended Motion seeking identical relief, and scheduled it to be heard on March 6, 2019. (ECF No. 245 and 246). The Certificate of Service attached to the Motion, as well as the notice of hearing ("NOH"), attests that a copy of the Motion and NOH was sent electronically to counsel for Doris, as well as to former counsel for William, in addition to the former Trustee. Electronic notice of the Motion also was given to the Office of the United States Trustee ("UST").

On February 20, 2019, opposition to the instant Motion was filed by Driftwood Trust that

---

[8] Among other things, the document provides that Doris "no longer claims an interest in the [Driftwood Property]," that Doris agrees "she will not contest any foreclosure by [BONY] pursuant to the terms of the deed of trust," and that Doris "will not contest any foreclosure by [BONY] pursuant to the terms of the deed of trust." Id. at ¶¶ 5, 6 and 7. The document assumes, of course, that Doris still has an interest in the Driftwood Property and that BONY still has a deed of trust encumbering the property.

7

includes the instant Counter-Motion.  (ECF No. 250).  The Counter-Motion is supported by the Declaration of Charles Schmidt ("Schmidt Declaration").  (ECF No. 251).  The Certificate of Service attached to the Counter-Motion attests that a copy of the Counter-Motion was sent electronically to counsel for Doris, counsel for William's estate, and to the former Trustee.  Electronic notice of the Counter-Motion also was given to the UST.

On February 27, 2019, BONY filed a reply in support of the instant Motion along with a separate opposition to the Counter-Motion ("BONY Opposition").  (ECF Nos. 252 and 253).

On March 4, 2019, Driftwood Trust filed a reply in support of its Counter-Motion ("Driftwood Reply").  (ECF No. 254).

## DISCUSSION

The automatic stay arises only upon the filing of a bankruptcy petition and is applicable to "all entities."  11 U.S.C. § 362(a).  The automatic stay applies, *inter alia*, to any act to "obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  The automatic stay also applies to any act to "enforce any lien against property of the estate."  11 U.S.C. § 362(a)(4).  The stay of acts against property of the estate continues until the property is no longer property of the bankruptcy estate.  See 11 U.S.C. § 362(c)(1).   Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  When they filed their separate Chapter 7 bankruptcy petitions, both Doris and William scheduled the Driftwood Property as an asset of their respective Chapter 7 bankruptcy estates.  As long as it is property of the bankruptcy estate, the Driftwood Property is protected by the automatic stay.

As recited above, the HOA issued its initial NOD on June 23, 2009, while the Chapter 7 proceedings for both Doris and William were still open.  Although the Trustee filed the Abandonment Notice with respect to the Driftwood Property on December 16, 2008, no order was ever entered approving the abandonment and the Driftwood Property remained property of the bankruptcy estate.  Additionally, although Countrywide obtained relief from stay on January 15, 2009, it never foreclosed on the Driftwood Property and the Driftwood Property remained property of the bankruptcy estate.   When the HOA recorded the Second NODAL on December 30, 2010, recorded the Notice of Default and Election to Sell on March 17, 2011, and recorded

8

the Notice of Trustee's Sale on September 8, 2011, the Driftwood Property was still property of the bankruptcy estate. Likewise, when the HOA Foreclosure sale took place on October 12, 2011, the Driftwood Property was still property of the bankruptcy estate.[9]

Under Nevada law, certain portions of homeowners association assessment liens have priority over residential mortgages. See NRS 116.3116(2)(b). When the homeowner does not satisfy the priority lien, the homeowners association can foreclose on the residence. The Nevada Supreme Court has concluded that a valid homeowners association foreclosure sale of residential property extinguishes the lower priority mortgage held by the residential lender. See SFR Inv. Pool 1, LLC v. U.S. Bank, 334 P.3d 408, 419 (Nev. 2014).[10] In a bankruptcy context, the consequence to the residential lender is extreme: the individual debtor's personal liability for the loan is discharged by the bankruptcy, see 11 U.S.C. § 727(b), and the lender's security interest against the residence is extinguished by the foreclosure. See also Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mort., 388 P.3d 970, 973 (Nev. 2017). The residential lender ends up with no enforceable obligation against the borrower because of the discharge injunction, see 11 U.S.C. § 524(a)(1 and 2), and the purchaser at the homeowner association foreclosure sale ends up with title to the residence unencumbered by the prior mortgage.

There is no dispute in the instant case that the HOA never obtained relief from stay before recording the NODAL as well as the Second NODAL, nor did it obtain relief from stay before completing the HOA Foreclosure sale. In this judicial circuit, it is well established that an act taken in violation of the automatic stay is *void ab initio*. See Schwartz v. U. S. (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992). Thus, a party that purchases an asset owned by a bankruptcy estate in violation of the automatic stay does not obtain valid legal title. See, e.g., 40235 Washington St. Corp. v. Lusardi (In re 40235 Washington St. Corp.), 329 F.3d 1076, 1080

---

[9] Also, as recited above, the Trustee filed her TFR on May 21, 2015, indicating that relief from stay had been obtained by Countrywide on January 15, 2009. This might explain why the Trustee never followed up on the Abandonment Notice by obtaining an order of abandonment with respect to the Driftwood Property.

[10] The residential lender can prevent an HOA foreclosure sale from being completed by making an unconditional tender of payment of the priority portion of the HOA assessment lien before the foreclosure sale is held. See Bank of America, N.A. v. SFR Investments Pool 1, LLC, 427 P.3d 113, 117-18 (Nev. 2018).

(9th Cir. 2003) (purchase of bankruptcy estate property at county tax sale in violation of automatic stay was without effect).

It appears that the HOA willfully violated the automatic stay under Section 362(a)(4) because it had actual knowledge of the bankruptcy case and proceeded with its foreclosure.[11] It also appears that LVDG violated the automatic stay under Section 362(a)(3) by obtaining possession and control of the Driftwood Property while it was still property of the estate. Absent notice or knowledge of the bankruptcy cases, however, LVDG's violation of the automatic stay does not appear to have been willful under Section 362(k).

Also, as mentioned above, the fourth claim now alleged in the BONY Action seeks a declaration that the HOA Foreclosure sale was void for two reasons: (1) that the underlying Nevada foreclosure statute is unconstitutional on its face,[12] and (2) that the HOA Foreclosure

---

[11] The homeowners association involved in the present dispute is only one of many such entities that have initiated foreclosure sales in violation of the automatic stay, which in turn have spawned costly litigation between former lenders and subsequent owners of residential real property. See, e.g., In re Lum Lung, 2018 WL 6980928, at *6 (Bankr. D.Nev. Dec. 6, 2018) (granting purchaser's motion to annul automatic stay to validate homeowners association foreclosure sale); In re Leeds, 589 B.R. 186, 195- 204 (Bankr. D.Nev. 2018) (denying purchaser's motion to annul automatic stay where purchaser at homeowners association foreclosure sale was a client of the Chapter 7 trustee); In re Lynn C. Burke, Case No. 12-12508-MKN, Order on Ex Parte Motion to Reopen Bankruptcy Case for the Purpose of Retroactively Annulling the Automatic Stay, Docket No. 45 (Bankr. D.Nev. Apr. 15, 2016) (granting purchaser's motion to annul automatic stay to validate HOA foreclosure sale); In re Victor H. Wheatley, Case No. 12-22310-MKN, Order on Motion for Relief from Stay re: 1304 Rawhide Street Las Vegas, Nevada, Docket No. 85 (Bankr. D.Nev. July 31, 2015) (granting homeowners association motion, joined by purchaser, to annul automatic stay to validate sale); In re Wayne Alan Haddad and Debra Ann Haddad, Case No. 11-13184-MKN, Order on Ex Parte Motion to Reopen Bankruptcy Case for the Purpose of Retroactively Annulling the Automatic Stay, Docket No. 36 (Bankr. D.Nev. May 19, 2015) (granting purchaser's motion to annul automatic stay to validate homeowners association foreclosure sale and overruling objection by debtors as to the impact of reopening on their credit history). Under Section 362(k)(1), an individual injured by a willful violation of the automatic stay is entitled to recover actual damages, including attorney's fees, as well as punitive damages in appropriate circumstances. As yet, the court is not aware of any instance where an individual injured as a result of a violation of the automatic stay by a homeowners association has sought and/or obtained damages from a homeowners association under Section 362(k)(1). But see In re Leeds, 589 B.R. at 204 n.30.

[12] The constitutionality of the Nevada foreclosure statute applicable to homeowners associations has been addressed in both state and federal courts in Nevada. The most recent decision of the Nevada Supreme Court has upheld the constitutional validity of the subject statute and the USDC has applied that decision in numerous cases. See note 5, supra. Multiple

10

sale was conducted in violation of the automatic stay. Instead of seeking summary judgment on its fourth claim from the USDC in the BONY Action, BONY filed the instant Motion in the bankruptcy court seeking part of the same relief: a ruling that the HOA Foreclosure sale violated the automatic stay in Doris's bankruptcy case and is therefore void.[13] In response, Driftwood Trust filed its Counter-Motion for retroactive relief from the automatic stay to validate the HOA Foreclosure sale.

Where the automatic stay has been violated, a party in interest may seek an order from the bankruptcy court to annul the automatic stay for "cause" under Section 362(d)(1). See Schwartz, 954 F.2d at 572-73.[14] Annulment of the automatic stay "has the effect of retroactively validating acts that otherwise violate the stay." Lonestar Sec. & Video, Inc., v. Gurrola (In re

---

additional appeals have been taken, and the Ninth Circuit is scheduled to hear oral arguments on March 11, 2019, on numerous decisions by the USDC. As of the date of the hearing on the instant matters, it does not appear that further activity has taken place in the Driftwood Trust Action even though it was remanded to the State Court on August 24, 2017. It is not clear whether the "first filed" rule would apply in favor of staying the BONY Action so that the earlier-filed Driftwood Trust Action can be completed in State Court. Compare United States v. Sarman, 699 F.2d 469 (9th Cir. 1983) (no compulsory counterclaim in federal tax lien foreclosure proceeding where defendant's claim was the subject of a prior state court probate proceeding commenced in Nevada).

[13] When Bayview and BONY removed the Driftwood Trust Action to the bankruptcy court, they represented that they would be removing numerous state court actions and would seek consolidation of all of them "for the limited purpose of filing a partial summary judgment motion based on the Ninth Circuit's ruling in *Bourne Valley*." Removal Notice at 3:18-19. Because the Driftwood Trust Action has been remanded to the State Court, there appears to be no impediment to the Driftwood Trust filing a partial summary judgment motion in State Court based, *inter alia*, on the Nevada Supreme Court's decision upholding the constitutionality of the Nevada homeowner association foreclosure statute. Because both state and federal trial courts follow the Nevada Supreme Court's recent decision upholding the validity of the Nevada homeowners association foreclosure statute, there appears to be no reason for any parties to engage in forum shopping.

[14] The automatic stay under Section 362(a) is not limited to creditors of the debtor but is "applicable to all entities." An "entity" under Section 101(15) includes any person, estate, trust, governmental unit, and the United States trustee." A "person" under Section 101(41) includes an "individual, partnership, and corporation." Relief from stay under Section 362(d) also is not limited to creditors of the debtor but may be sought by any "party in interest." Because Driftwood Trust is a person and therefore a party in interest to which the automatic stay apples, it is permitted under Section 362(d) to seek relief from stay in this bankruptcy case.

Gurrola), 328 B.R. 158, 172 (B.A.P. 9th Cir. 2005). See, e.g., Ceralde v. The Bank of N.Y. Mellon (In re Ceralde), 2013 WL 4007861 (B.A.P. 9th Cir. Aug. 6, 2013) (annulment motion granted in involuntary Chapter 7 case in favor of lender that foreclosed without prior knowledge of involuntary proceeding). See also, Sundquist v. Bank of Am., N.A. (In re Sundquist), 566 B.R. 563, 685 (Bankr. E.D. Cal. 2017).

In this case, neither BONY nor Driftwood Trust are parties to the Chapter 7 proceedings that the automatic stay is designed to protect, i.e., Doris and Charles, and their assigned bankruptcy trustee. In this circuit, a party asserting an ownership interest in property of a bankruptcy estate does have standing as a party in interest to seek annulment of the automatic stay. See In re McKay, 2019 WL 642834, at *6 (Bankr. D. Idaho Feb. 14, 2019), citing Cruz v. Stein Strauss Trust # 1361, PDQ Invs., LLC (In re Cruz), 516 B.R. 594, 602 (B.A.P. 9th Cir. 2014); In re Lum Lung, 2018 WL 6980928, at *3 n.5. Also in this circuit, however, a creditor of a bankruptcy estate does not have standing to object to annulment of the automatic stay. See In re Leeds, 589 B.R. at 198-200, citing Tilley v. Vucurevich (In re Pecan Groves of Arizona), 951 F.2d 242 (9th Cir. 1991).[15] BONY therefore has no standing to respond to the Driftwood Trust's Counter-Motion and this bankruptcy court is not required to consider BONY's objections to the requested relief. Nonetheless, the court separately considers if the retroactive relief requested is appropriate based on the facts presented.

Whether "cause" exists under Section 362(d)(1) to annul the stay is determined under a "balancing of the equities" test. See In re Fjeldsted, 293 B.R. 12, 24 (B.A.P. 9th Cir. 2003). The following factors should be considered:

> 1. Number of filings;
> 2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
> 3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser;

---

[15] Although this bankruptcy court has expressed a different view that the automatic stay also protects creditors, see In re Leeds, 589 B.R. at 200 n.22, the Ninth Circuit recently reiterated its view in Pecan Groves that the only parties with standing to object to retroactive relief from stay are the debtor and the bankruptcy trustee. See U.S. Bank, N.A. v. SFR Investments Pool 1, LLC (In re Petrone), 2019 WL 911869, at *1-2 (9th Cir. Feb. 22, 2019). This court is, of course, bound by the views of the Ninth Circuit.

12

      4. The Debtor's overall good faith (totality of circumstances test): *cf. Fid. & Cas. Co. of N.Y. v. Warren (In re Warren),* 89 B.R. 87, 93 (9th Cir. BAP 1988)(chapter 13 good faith);
      5. Whether creditors knew of stay but nonetheless took action, thus compounding the problem;
      6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
      7. The relative ease of restoring parties to the *status quo ante;*
      8. The costs of annulment to debtors and creditors;
      9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
      10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
      11. Whether annulment of the stay will cause irreparable injury to the debtor;
      12. Whether stay relief will promote judicial economy or other efficiencies.

Id. at 25.[16]

      Five of these factors (1, 2, 4, 6, and 11) focus solely on the debtor ("debtor factors"); three of these factors (3, 5, and 10) focus solely on non-debtors ("non-debtor factors"); three of these factors (7, 8, and 9) focus on both the debtor and non-debtor parties ("common factors"); and one factor (12) looks to judicial interests ("neutral factor"). All twelve factors ("Fjeldsted Factors") simply provide an analytical framework and any one factor may be dispositive in comparison to the others. Id. Thus, determining whether annulment is proper is made on a case by case basis. See Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.), 129 F.3d 1052, 1055 (9th Cir. 1997).[17]

---

[16] Factor 5 refers to the Warren decision by the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"). In that proceeding, the individual debtor sought to discharge a $40,970 embezzlement judgment through a Chapter 13 plan that paid only $1,000 to his creditors. The embezzlement judgment would have been nondischargeable in Chapter 7 under Section 523(a)(6), but was not excepted from the so-called "super-discharge" in Chapter 13 under then-Section 1328(c). 89 B.R. at 93. The BAP determined that a finding of the debtor's good faith in proposing a plan under Section 1325(a)(3) should take into consideration the amount of the proposed payment to creditors and the presence of a debt that would be nondischargeable in Chapter 7. Id. at 95.

[17] The parties to the instant dispute correctly refer to the Fjeldsted Factors, see Counter-Motion at 17:1-19, BONY Opposition at 7:20 to 1-11, and Driftwood Reply at 5:24 to 6:2, but, of course, reach opposite conclusions. The court has considered all of the written and oral arguments presented by counsel.

In this instance, the previously categorized debtor factors favor retroactive relief from stay. Neither Doris nor William have a history of repeat bankruptcy filings that might suggest a malign intent to delay or hinder creditors. Doris obtained her Chapter 7 discharge by complying with the applicable requirements of bankruptcy law, and no party in interest has questioned her good faith. William died before he could obtain a Chapter 7 discharge, but no one suggests that his bankruptcy filing was not in good faith. More important, rather than causing irreparable injury to Doris, it appears that retroactive relief from stay will prevent her from losing the benefit of her bankruptcy discharge. If the HOA Foreclosure sale was void and title did not pass to LVDG, then title remains in Doris's name and in William's estate. When they filed their respective bankruptcy petitions, neither sought to reside in the Driftwood Property and neither of them claimed it as their homestead. Because neither Doris nor William made payments on the underlying obligation for more than a decade, Doris would be subject to a renewed foreclosure of the Driftwood Property occurring well after she received her Chapter 7 discharge. Indeed, by obtaining a disclaimer from Doris in connection with the BONY Action, BONY acknowledges that it would seek for foreclose on its deed of trust if it was able to successfully challenge the HOA Foreclosure sale. The post-discharge damage to Doris's new credit history is likely to be significant and certainly detrimental to her fresh start through Chapter 7.

The non-debtor factors also favor retroactive relief. There is no suggestion in the record that LVDG or Driftwood Trust had notice or actual knowledge of either bankruptcy case, or knew that the HOA Foreclosure sale was in violation of the automatic stay. In fact, the record demonstrates that LVDG was never listed as a creditor or interested party in the bankruptcy proceedings at any time.[18] Thus, the evidence in the record infers that LVDG did not know of the automatic stay and did not take steps to continually violate the stay. Moreover, the

---

[18] Even when BONY filed its motion for relief from stay in Doris's case on August 22, 2012, it never served LVDG with the motion or notice of hearing. (ECF No. 148). Likewise, after the order granting relief from stay was entered, it never served LVDG with notice of entry of the order. (ECF No. 152). Moreover, when BONY filed its motion for relief from stay in William's case on February 5, 2013, it never served LVDG with that motion or notice of hearing. (2ECF No. 59). After the order granting relief from stay was entered (2ECF No. 62), there is no evidence on the docket that LVDG was sent even electronic notice, much less service, of the order.

14

Driftwood Trust promptly sought retroactive relief from stay after BONY asserted the protection of the automatic stay. Because LVDG apparently was a bona fide purchaser of the Driftwood Property, the prejudice to its successor in interest was greater than that of a lender who would have had an opportunity to tender payment of any delinquent HOA assessments to prevent a foreclosure sale. See discussion at note 10, supra. See also SFR Inv. Pool 1, LLC v. U.S. Bank, 334 P.3d 408, 414 (Nev. 2014) ("But as a junior lienholder, U.S. Bank could have paid off the SHHO A lien to avert loss of its security…The inequity U.S. Bank decries is thus of its own aking…").[19] While the non-debtor factors do not favor the HOA, they do support retroactive relief in favor of Driftwood Trust.[20]

The common factors also support retroactive relief from stay. As already discussed, if the foreclosure sale is void, legal title to the Driftwood Property never left Doris or William's estate. Restoration of the "status quo ante," however, means not only that legal title to the Driftwood Property remains in the Chapter 7 debtors, but that Driftwood Property would have an unpaid priority assessment lien, the Chapter 7 debtors would be in substantial default on their loan, and the lender's deed of trust against the Driftwood Property would be restored.[21]

---

[19] Although Countrywide obtained an order granting relief from stay on January 15, 2009, well before the HOA recorded its second NODAL on December 30, 2010, it apparently took no steps to foreclose on the Driftwood Property. Even after the HOA recorded a Notice of Default and Election to Sell, as well as a Notice of Sale, both of which were based on the Second NODAL, neither Countrywide nor BONY took steps to cure the HOA assessments, or otherwise sought to prevent completion of the HOA Foreclosure sale on October 12, 2011. In fact, BONY did not file its own relief from stay motion until August 22, 2012, well after the HOA Foreclosure sale was completed. It is not clear why Countrywide did not foreclose on the Driftwood Property well before the Second NODAL was recorded, nor is it clear why BONY did not tender the unpaid assessment lien to prevent the HOA Foreclosure sale.

[20] The windfall obtained by LVDG in this case, see note 3, supra, should not be lost on anyone to this dispute. That windfall, however, is the result of the Nevada statutory scheme that provides extraordinary tools for homeowners associations to collect assessments required to protect and serve common community needs. Residential lenders can protect their interests, however, by pursuing remedies under their deeds of trust, or, by tendering payment of any delinquent assessments to the homeowners association.

[21] The "status quo ante" is a term of art referring to the conditions that existed before the challenged action took place. See, e.g., Czyzewski v. Jevic Holding Corp., 137 S.Ct. 973, 985-86 (2017) (structured Chapter 11 dismissal did not restore status quo ante, but distributed debtor's assets in violation of bankruptcy priority scheme).

15

Additionally, Driftwood Trust would have no legal interest in the Driftwood Property and LVDG would be out the $17,285.00 that it paid at the foreclosure sale.[22]  Even if the $17,285.00 paid by LVDG is ignored, there will be difficulty restoring the real property records to reflect the state of title to the Driftwood Property that existed prior to the October 12, 2011, foreclosure.  The other common factors are immaterial.

The remaining "neutral factor" also favors retroactive relief.  This is a Chapter 7 case that originally was reopened for the limited purpose of allowing Doris to pursue a motion for sanctions against BONY for violating the discharge injunction.  That Sanctions Motion was resolved and dismissed after Doris was dismissed with prejudice from the BONY Action.  Before Doris's bankruptcy case could be re-closed, BONY filed the instant Motion.  However, there are no other pertinent proceedings in this bankruptcy court involving the parties to this Motion and the BONY Action is currently pending before the USDC.  Doris has been given notice of the retroactive relief from stay requested by Driftwood Trust and does not oppose such relief.  Moreover, notice of the relief requested by Driftwood Trust also has been given to the UST which also does not oppose, nor has the UST taken steps to appoint another Chapter 7 trustee to respond to the Counter-Motion.  On the other hand, the BONY Action remains before the USDC where other controversies may be litigated between Driftwood Trust and BONY, including any remaining issues as to the validity of the Nevada HOA foreclosure statute.  Judicial economy supports allowing the parties to return to the USDC to resolve those issues, if any.

Based on the foregoing, the court finds that the Fjeldsted factors taken as a whole - the debtor, non-debtor, creditor, and neutral factors – favor retroactive relief from stay for cause under Section 362(d)(1).  Therefore, the court concludes that the automatic stay in Doris's case that arose on April 14, 2008, and the automatic stay that arose in William's case on August 21,

---

[22] Driftwood Trust also maintains that after LVDG acquired the Driftwood Property at the HOA Foreclosure on October 12, 2011, LVDG expended significant amounts on maintenance.  See Schmidt Declaration at ¶ 18.  It also maintains that Driftwood Trust has expended approximately $100,000 to maintain and improve the property.  Id. at ¶ 19.  Whether LVDG or Driftwood Trust could seek damages against the HOA, its agents or other parties, for conducting a foreclosure sale that was void under bankruptcy law, is not before the court.

16

1  2008, should be annulled to include all steps necessary after the commencement dates to
2  complete the HOA Foreclosure sale of the Driftwood Property.
3      **IT IS THEREFORE ORDERED** that the Second Amended Motion for Determination
4  that HOA Foreclosure Sale Violated the Automatic Stay, brought by The Bank of New York
5  Mellon fka The Bank of New York as Trustee for the Certificateholders of CWALT, Inc.,
6  Alternative Loan Trust 2005-58, Mortgage Pass-Through Certificates, Series 2005-58, Docket
7  No. 245, be, and the same hereby is, **DENIED AS MOOT.**
8      **IT IS FURTHER ORDERED** that the Counter-Motion to Retroactively Annul the Stay,
9  brought by 2298 Driftwood Tide Trust, Docket No. 250, be, and the same hereby is,
10 **GRANTED**.

Copies sent via CM/ECF ELECTRONIC FILING

Copies sent via BNC to:
DORIS J. BARRETT
700 CARNEGIE ST #1413
HENDERSON, NV 89052

# # #